UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANNIE SMITH,** *et al.,*

           **Plaintiffs,**

v.

**THE OHIO SUPREME COURT,**
*et al.,*

           **Defendants.**

:

:

**Case No. 2:25-cv-773**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge S. Courter M. Shimeall**

## OPINION AND ORDER

Dannie Smith, an African American law-school graduate who proceeds without counsel, challenges certain of Ohio's bar licensing requirements. This case is now before the Court on several motions: (1) the motion to dismiss (ECF No. 43) filed by the National Conference of Bar Examiners ("NCBE"); (2) the motion to dismiss (ECF No. 45) and the motion to stay discovery (ECF No. 44) filed by the Supreme Court of Ohio ("SCOH"), the Ohio Board of Bar Examiners ("OBBE"),[1] and the State of Ohio (collectively, the "Ohio Defendants"); and (3) Mr. Smith's motion for a preliminary injunction (ECF No. 48).

For the reasons below, NCBE's motion to dismiss is **GRANTED**, the Ohio Defendants' motion to dismiss is **GRANTED**, the Ohio Defendants' motion to stay discovery is **DENIED as moot**, and Mr. Smith's preliminary injunction motion is **DENIED as moot**.

---

[1] Mr. Smith erroneously refers to OBBE as the "Ohio Board of Law Examiners" in his Amended Complaint, so the Court corrects that reference here.

## I. BACKGROUND

The following summary draws from the allegations in Mr. Smith's Amended Complaint (ECF No. 40-1), as well as any documents integral to and incorporated therein.

Ohio has established rules governing attorney licensure, including requirements that candidates must meet to be admitted to the Ohio bar. (Am. Compl. ¶¶ 34, 36, ECF No. 40-1.) As relevant here, one such requirement is that applicants must "[h]ave passed the Ohio bar examination or been admitted by transferred [Uniform Bar Examination ("UBE")] score …, passed the Ohio Law Component, and passed the Multistate Professional Responsibility Examination (MPRE), or have been approved for admission without examination[.]" Ohio Gov. Bar. R. I, § 1(E) ("Bar Passage Requirement").

The UBE is a standardized test that NCBE "develop[ed], scores, and tracks." (Am. Compl. ¶¶ 7, 39, ECF No. 40-1.) In 2017, SCOH commissioned a task force to evaluate the efficacy and impact of administering the UBE as part of Ohio's bar examination. (*Id.* ¶¶ 94–95.) The task force "recognized that the newly adopted UBE licensing standards had the potential for disproportionately impacting African Americans' ability to gain employment as licensed Ohio attorney practitioners." (*Id.* ¶ 96.) Ohio adopted the UBE as one component of its bar examination in 2018 and set 270 as the minimum passing score. (*Id.* ¶¶ 13, 25, 70, 94; *but see id.* ¶¶ 38, 102 (referencing institution of "new Bar licensing requirement" in 2020).)

2

After graduating law school, Mr. Smith (an Ohio resident) wanted to practice in Ohio. (Am. Compl. ¶¶ 1, 15, ECF No. 40-1.) He studied for the Ohio bar examination using a professional preparation course and took the test in July 2023, February 2024, and July 2024. (*Id.* ¶¶ 17, 19, 21.) Each time, however, Mr. Smith failed to achieve a passing score of 270 on the UBE portion of the examination. (*Id.* ¶¶ 20, 24–26.) Mr. Smith took the Ohio bar examination in July 2025 (*see* ECF Nos. 19, 21), but it does not appear that he passed on that attempt, either. Because of this, Mr. Smith has not satisfied the Bar Passage Requirement and has yet to be admitted to practice in Ohio. (Am Compl. ¶¶ 26–27, ECF No. 40-1.)

## II.    PROCEDURAL HISTORY

Mr. Smith filed this case in July 2025.[2] (Compl., ECF No. 1.) He asserted six claims against NCBE and the Ohio Defendants (together, "Defendants") arising from his allegations that the Bar Passage Requirement is invalid and unlawful because it has a disparate impact on African Americans. (*See generally id.*)

In tandem with his Complaint, Mr. Smith moved for a temporary restraining order ("TRO") and a preliminary injunction, seeking to "pause the administration of the [July 2025] UBE licensing exam" and enjoin Defendants from, *inter alia*, enforcing the Bar Passage Requirement. (ECF No. 4.) The Court scheduled a status conference on the TRO but vacated the same upon learning that Mr. Smith had already sat for the July 2025 bar examination. (ECF Nos. 18, 19.)

---

[2] Mr. Smith initially proceeded under the pseudonym "John Doe" and moved to use that pseudonym through the remainder of the case (ECF No. 3), but the Court denied his motion (ECF No. 31).

Before the Court could rule on Mr. Smith's preliminary injunction motion, the Magistrate Judge granted him leave to amend his Complaint, and he did so in December 2025. (Am. Compl., ECF No. 40-1.) Therein, Mr. Smith levies the same allegations surrounding the Bar Passage Requirement's discriminatory nature, but he now brings twenty claims against Defendants:

- Violation of Title VII of the Civil Rights Act of 1964 (Count 1);
- Civil Conspiracy and Conspiracy to Interfere with Civil Rights "in violation of Title VII" (Counts 2 and 3);
- Violation of Section 601 of Title VI of the Civil Rights Act of 1964 (Count 4);
- Civil Conspiracy and Conspiracy to Interfere with Civil Rights "in violation of Section 601 [of] Title VI" (Counts 5 and 6);
- Due Process Violations under the Fifth and Fourteenth Amendments (Counts 7 and 8);
- Equal Protection Violations under the Fifth and Fourteenth Amendments (Counts 9 and 10);
- Civil Conspiracy and Conspiracy to Interfere with Civil Rights "in violation of the Fifth and Fourteenth Amendments" (Counts 11 and 12);
- Violation of the Privileges and Immunities Clause (Count 13);
- Civil Conspiracy and Conspiracy to Interfere with Civil Rights "in violation of the Privileges and Immunities Clause" (Counts 14 and 15);
- Violation of the Commerce Clause (Count 16);
- Civil Conspiracy and Conspiracy to Interfere with Civil Rights "in violation [of] the Commerce Clause" (Counts 17 and 18);
- Failure to Train under 42 U.S.C. § 1983 (Count 19); and
- "Negligent/Intentional" Infliction of Emotional Distress (Count 20).

(Am. Compl. ¶¶ 33–210.[3]) By way of relief, Mr. Smith seeks monetary damages and asks the Court to "pause" the Bar Passage Requirement and order SCOH to "immediately allow [him] to take the oath of office and be admitted to the Ohio Bar." (*Id.*, PAGEID # 492.)

---

[3] The Amended Complaint contains two claims numbered as Count 8 and no claim numbered as Count 15. (*See generally* Am. Compl., ECF No. 40-1.) The Court has corrected this numbering herein.

4

Defendants thereafter moved to dismiss Mr. Smith's Amended Complaint and to stay discovery pending a decision on dismissal. (ECF Nos. 43–45.) Mr. Smith also renewed his original request for preliminary injunctive relief preventing Defendants from enforcing the Bar Passage Requirement. (ECF No. 48.) All motions are fully briefed and ripe for consideration.[4]

## III.    MOTIONS TO DISMISS

Because the Ohio Defendants seek dismissal of Mr. Smith's Amended Complaint for lack of subject-matter jurisdiction, the Court first addresses the motions to dismiss.

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when a court lacks subject-matter jurisdiction. Without subject-matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). When subject-matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "questions merely the sufficiency of the

_____

[4] Mr. Smith requests oral argument on his preliminary injunction motion. (ECF No. 48, PAGEID # 653.) But the parties have adequately presented their arguments and facts in their extensive briefing, such that oral argument would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); S.D. Ohio Civ. R. 7.1(a). Mr. Smith's request is therefore **DENIED**.

pleading"—thus, the trial court takes the allegations of the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A factual attack challenges the factual existence of subject-matter jurisdiction, such that no presumption of truth applies to the alleged facts. *Ritchie*, 15 F.3d at 598.

Separately, Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

6

suffice." *Id*. In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions. *See Martin v. Overton*, 391 F.3d. 710, 714 (6th Cir. 2004). Indeed, his "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B.     The Ohio Defendants' Motion to Dismiss

The Ohio Defendants move to dismiss Mr. Smith's Amended Complaint on several grounds. First, they argue that Eleventh Amendment sovereign immunity bars many of Mr. Smith's claims. (ECF No. 45, PAGEID # 556.) Second, they contend that the *Rooker-Feldman* doctrine precludes Mr. Smith from bringing his claims. (*Id.*, PAGEID # 558.) Third, they dispute Mr. Smith's standing under Article III to assert his Commerce Clause claim and his request for injunctive relief in the form of "pausing the administration of Ohio's UBE Bar Exam." (*Id.*, PAGEID # 561–62.) Finally, they attack Mr. Smith's claims on their merits. (*Id.*, PAGEID # 563.)

Upon review, the Court concludes that sovereign immunity and the *Rooker-Feldman* doctrine prevent the Court from exercising subject-matter jurisdiction over Mr. Smith's federal claims. And, as a result, the Court declines to exercise supplemental jurisdiction over Mr. Smith's state-law claims.

7

### 1.     Sovereign Immunity

State sovereign immunity bars all suits—whether for injunctive, declaratory or monetary relief—against a state and its departments. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01 (1984). Suits for monetary relief against state agents sued in their official capacities are also barred. *Boler v. Earley,* 865 F.3d 391, 409 (6th Cir. 2017); *cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself.").

There are three exceptions to state sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity; and (3) when the doctrine articulated in *Ex Parte Young*, 209 U.S. 123 (1908), applies (i.e., when a claim seeks "prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations"). *Boler*, 865 F.3d at 410 (citation omitted). If none of these exceptions apply, sovereign immunity prohibits the claim, and federal courts lack subject-matter jurisdiction over it. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Pennhurst*, 465 U.S. at 98–100).

In this case, the Eleventh Amendment immunizes each of the Ohio Defendants from suit. *See, e.g.*, *Haller v. Lipps*, No. 1:11-CV-291, 2012 WL 479083, at *1 (S.D. Ohio Feb. 14, 2012) (Beckwith, J.) ("The Supreme Court of Ohio and the State of Ohio are immune from suit pursuant to Eleventh Amendment sovereign

immunity.") (citing *Mixon v. State of Ohio*, 193 F.3d 389, 396 (6th Cir. 1999)); *cf.*

*Dubuc v. Mich. Bd. of L. Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (finding that

Michigan Board of Law Examiners is a state agency entitled to immunity). Unless

an exception applies, Mr. Smith cannot pursue his case against them.

Looking to Mr. Smith's federal claims, he brings multiple claims under 42

U.S.C. § 1983, including (1) a claim for "failure to train" (presumably under *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); and (2) due process and equal protection

claims under the Fifth and Fourteenth Amendments.[5] (*See generally* Am. Compl.,

ECF No. 40-1.) However, "Ohio has not waived sovereign immunity in federal

court," *Mixon*, 193 F.3d at 397, and "Section 1983 does not abrogate Eleventh

Amendment immunity," *Boler*, 865 F.3d at 410.

Nor does the *Ex Parte Young* doctrine thwart sovereign immunity here. That

doctrine applies when a lawsuit "involves an action against state officials, not

against the state itself." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590,

598 (6th Cir. 2016); *see also Carroll v. Univ. of Kent.*, No. CV 5:25-419-DCR, 2026

---

[5] Mr. Smith explicitly invokes § 1983 only for his failure-to-train claim. Still, he references the statute as part of his jurisdictional allegations (*see* Am. Compl. ¶ 9, ECF No. 40-1), so the Court liberally construes his *pro se* pleading as bringing his Fifth and Fourteenth Amendment claims pursuant to § 1983. *See, e.g.*, *Jones v. City of Warrensville Heights*, No. 1:18 CV 647, 2019 WL 1077691, at *3 n.3 (N.D. Ohio Mar. 6, 2019) ("Although Count One does not mention § 1983, claims of 'constitutional violations' are brought via § 1983.").

That said, Mr. Smith's Fifth Amendment claims (Counts 7 and 9) fail on their face because the Fifth Amendment "restrict[s] only the Federal Government." *Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952). Mr. Smith does not allege any federal action, so the Fifth Amendment is inapplicable to his § 1983 claims against the Ohio Defendants.

WL 906664, at *5 (E.D. Ky. Apr. 2, 2026) ("[T]he *Ex parte Young* exception applies only to the individual defendants sued in their official capacity.") (citing *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021)). Because Mr. Smith has not brought any claims against individual defendants, the doctrine does not apply.

Mr. Smith disputes this conclusion, but his arguments are unavailing. He insists that the Amended Complaint names the Ohio Defendants "individually and in their official capacit[ies]" and that "the individual judges and the individual members of [OBBE]" are capable of being sued. (ECF No. 46, PAGEID # 596 (citing Am. Compl., ECF No. 40-1, PAGEID # 466).) But Mr. Smith does not specifically name (or even informally reference) any individual person in his Amended Complaint. And simply including the phrase "individually and in their official capacity" after an entity name does not suffice.[6] Indeed, a § 1983 plaintiff must allege with particularity the personal involvement of each defendant. *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011). The Amended Complaint is devoid of any facts regarding what any *individuals* did to violate Mr. Smith's rights. So, the *Ex Parte Young* exception does not apply, and sovereign

---

[6] Mr. Smith represents that he "intends to name those specific individuals who have a direct connection to the constitutional violations" at the "conclusion of discovery." (ECF No. 46, PAGEID # 596.) But parties cannot use discovery as a fishing expedition to uncover the facts necessary to support the causes of action presented in the complaint. *See, e.g.*, *New Albany Tractor, Inc., v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). Thus, Mr. Smith "may not use the discovery process to obtain [necessary] facts after filing suit." *Id.*

immunity bars Mr. Smith's remaining § 1983 claims (Counts 8, 10, and 19) against the Ohio Defendants.

Mr. Smith also brings claims under 42 U.S.C. § 1985 (Counts 3, 6, 12, 15, and 18),[7] but those fare no better. Again, Ohio has not waived sovereign immunity in federal court, and the *Ex Parte Young* exception does not apply for the reasons above. Likewise, Congress has not abrogated state sovereign immunity for claims brought under § 1985. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979); *see also, e.g.*, *Tyler v. Univ. of Louisville*, No. 3:06 CV 151 R, 2006 WL 3412273, at *4 (W.D. Ky. Nov. 27, 2006). As such, sovereign immunity also bars these § 1985 claims against the Ohio Defendants.

Sovereign immunity does not, however, cut off Mr. Smith's federal claims under Title VI and Title VII because Congress abrogated states' immunity under both of those statutes. *See Lane v. Pena*, 518 U.S. 187, 202 (1996) (Title VI); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 451–52 (1976) (Title VII). Additionally, the Ohio Defendants do not meaningfully argue that they are immune from Mr. Smith's claims under the Privileges and Immunities Clause or the Commerce Clause. These causes of action (Counts 1, 4, 13, and 16) are therefore not barred.

Considering the inapplicability of the Fifth Amendment and the Ohio

---

[7] These Counts assert claims for "conspiracy to interfere with civil rights." (*See* Am. Compl., ECF No. 40-1.) Although Mr. Smith does not reference § 1985 when setting forth the allegations underlying these five claims, he invokes § 1985 earlier in the Amended Complaint (*see id.* ¶ 9) and discusses these claims in the context of § 1985 in his Opposition (*see* ECF No. 46, PAGEID # 635). The Ohio Defendants further characterize these claims as § 1985 claims (*see* ECF No. 45, PAGEID # 555), and Mr. Smith does not object to that characterization.

Defendants' sovereign immunity, the Court **GRANTS** the Ohio Defendants' motion to dismiss as to Counts 3, 6, 7–10, 12, 15, 18, and 19.

### 2. The *Rooker-Feldman* Doctrine

The Ohio Defendants next urge the Court to apply the *Rooker-Feldman* doctrine to preclude Mr. Smith's remaining claims against them. (ECF No. 45, PAGEID # 558); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks and citations omitted). The *Rooker-Feldman* doctrine thus applies "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006); *see also McCormick v. Braverman,* 451 F.3d 382, 394 (6th Cir. 2007) ("[T]he source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.").

*Feldman* is particularly instructive in this case. There, the Supreme Court

recognized "the difference between seeking review in a federal district court of a state court's final judgment in a bar admission matter and challenging the validity of a state bar admission rule[.]" *Feldman*, 460 U.S. at 483–84; *see also id.* at 485 (noting "the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission"). On one hand, district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." *Id.* at 486. On the other hand, district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.*

The Court's "central task" in evaluating the Ohio Defendants' *Rooker-Feldman* challenge is to "distinguish between a claim that attacks a state court judgment and an independent claim, the latter in which jurisdiction may be asserted." *King v. CitiMortgage, Inc.*, No. 2:10-CV-01044, 2011 WL 2970915, at *6 (S.D. Ohio July 20, 2011) (Graham, J.). The Court looks to the "source of the injury [Mr. Smith] alleges in the [Amended Complaint]" and Mr. Smith's request for relief. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (citations omitted).

The decisions to deny Mr. Smith admission to the Ohio bar based on his below-passing UBE scores in July 2023, February 2024, and July 2024 (and,

presumably, July 2025) were judicial decisions made in judicial proceedings. *See, e.g.*, *Graham v. Mengel*, No. C-3-90-413, 1990 WL 1016519, at *6–7 (S.D. Ohio Nov. 29, 1990) (Rice, J.) (discussion). To determine whether the Court has subject-matter jurisdiction over this action, then, the Court must evaluate whether Mr. Smith's claims raise a general validity challenge to the Bar Passage Requirement or are "inextricably intertwined" with the Ohio Defendants' failure to refer him for admission. The Court finds the latter, such that the *Rooker-Feldman* doctrine prevents the Court from exercising jurisdiction over these claims.

Focusing on Mr. Smith's alleged injuries, he asserts that he was not "referred … for licensing" due to his UBE scores and that he suffered "severe emotional distress" as a result. (Am. Compl. ¶¶ 26–27, 210, ECF No. 40-1.) In terms of relief, Mr. Smith seeks an injunction against the Bar Passage Requirement's continued enforcement, a declaration that he is "competent to practice Ohio law as outlined in one of the less discriminatory licensing approache[s]," an Order requiring SCOH to "immediately allow [him] to take the oath of office and be admitted to the Ohio Bar," and monetary relief. (*Id.*, PAGEID # 492.)

Mr. Smith's Amended Complaint undoubtedly takes issue with the Ohio Defendants' refusal to refer him to the practice of law. Mr. Smith maintains that he "does not seek to have the [Court] overturn the previous denial[s] of his individual application[s]" (*see* ECF No. 46, PAGEID # 592), but certain allegations in his Amended Complaint belie his argument. For instance, Plaintiff asserts that the "sole" reason that he was not referred for admission was his UBE scores. (Am.

14

Compl. ¶ 25, ECF No. 40-1.) He contends that the Bar Passage Rule has "inhibited" *his* ability to gain employment as a lawyer and that the Ohio Defendants' scoring of *his* bar examinations was racially discriminatory. (*Id.* ¶¶ 59, 134.) Where, as here, "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law," the *Rooker-Feldman* doctrine acts to preclude jurisdiction. *McCormick*, 451 F.3d at 395; *see, e.g., Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007) ("[T]he relief the Lorizes seek— a declaration that the state courts reached an improper result based on a faulty application of the law—is … a specific grievance over specific decisions. These claims are exactly the type the *Rooker-Feldman* doctrine intended to bar[.]"). Mr. Smith's allegations essentially amount to criticisms of the Ohio Defendants' refusal to refer him for admission and how they arrived at that decision, confirming that the refusal is the main source of his injury.

Mr. Smith's requested relief further reinforces this conclusion. He demands that the Ohio Defendants monetarily compensate him for *his* suffering, and he asks the Court to declare that *he* is "competent" to practice law and facilitate *his* immediate admission to the Ohio bar. (Am. Compl., ECF No. 40-1, PAGEID # 492.) Were the Court to afford this as-applied relief, it would essentially be overturning the Ohio Defendants' admissions decisions. *See, e.g.*, *Stanfield v. Horn*, 704 F. Supp. 1487, 1491 (M.D. Tenn. 1989) (finding no jurisdiction under *Rooker-Feldman* where plaintiff sought relief in the form of "the certification and license of [ ] plaintiff as an attorney-at-law," which indicated that "the primary thrust of [ ] plaintiff's action is

15

the Board's denial of her application for admission to the bar"), *aff'd*, 884 F.2d 580 (6th Cir. 1989); *cf. Lawson v. Kennedy, et al.*, No. 2:25-CV-607, 2026 WL 879657, at *6 (S.D. Ohio Mar. 31, 2026) (Watson, J.) (allowing some claims to proceed under *Rooker-Feldman* when plaintiff's sought-after relief would "encompass conduct related to the promulgation and enforcement of the Disbarment Rule, *irrespective of [p]laintiff's involvement therewith*") (emphasis added). This indicates that Mr. Smith mainly takes issue with his lack of admission and the Ohio Defendants' conduct as to the same, which he may not do in this Court under the *Rooker-Feldman* doctrine.

Although Mr. Smith argues that he is making a general challenge to the Bar Passage Requirement, a reading of his Amended Complaint reveals that the core of his claims is a challenge to the Ohio Defendants' application of the rule to him. His federal claims are inextricably intertwined with the state determinations of his case, depriving the Court of subject-matter jurisdiction. The Ohio Defendants' motion to dismiss as to Counts 1, 4, 13, and 16 is **GRANTED**.

### 3. State-Law Claims

The Amended Complaint raises six claims under Ohio law, including five conspiracy claims and one claim for "negligent/intentional" infliction of emotional distress. (*See generally* Am. Compl., ECF No. 40-1.)

Having dismissed Mr. Smith's federal claims against the Ohio Defendants, the Court declines to exercise supplemental jurisdiction over his state-law claims. The United States district courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life*

16

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (holding that claims are part of the same case or controversy if they derive from a "common nucleus of operative facts"). But supplemental jurisdiction is a matter of judicial discretion and "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726.

Because the parties are citizens of the same state (Ohio), the Court lacks original jurisdiction over Mr. Smith's state-law claims against the Ohio Defendants. *See, e.g.*, *Givens v. Longwell*, No. 2:25-CV-593, 2025 WL 1797046, at *3 (S.D. Ohio June 30, 2025) (Vascura, M.J.), *R&R adopted*, 2025 WL 2451158 (S.D. Ohio Aug. 26, 2025) (Morrison, C.J.). And where, as here, a court dismisses a plaintiff's federal claims pursuant to Rule 12(b)(1), "then supplemental jurisdiction can *never* exist." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (emphasis in original), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998). So, lacking jurisdiction, the Court **GRANTS** the Ohio Defendants' motion as to the state-law claims (Counts 2, 5, 11, 14, 17, and 20).

### C.    NCBE's Motion to Dismiss

NCBE also asks the Court to dismiss all of Mr. Smith's claims against it. (ECF No. 43.) NCBE argues that Mr. Smith has not stated a claim under Rule 12(b)(6) with respect to any of his twenty causes of action. (*Id.*, PAGEID # 507–08.)

17

### 1. Title VII, Title VI, and Conspiracy to Violate those Statutes (Counts 1, 3, 4, and 6)

At the outset, Mr. Smith's Title VII claim against NCBE cannot prevail because he has not exhausted his administrative remedies, which is "a non-jurisdictional condition precedent to bringing a Title VII claim." *Walenciej v. E. Ohio Correction Ctr.*, No. 24-3571, 2025 WL 789556, at *4 (6th Cir. Mar. 12, 2025) (citing 42 U.S.C. § 2000e-5(f)). To do so, a plaintiff must file an administrative charge with the EEOC or a proper state or local agency. *Id.* (citation omitted). "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Mr. Smith admits that he did not name NCBE in his EEOC complaint. (*See* ECF No. 46, PAGEID # 639 (referring to NCBE as "an uncharged claimant"); ECF No. 46-1 (February 2025 EEOC complaint naming SCOH as employer and referencing OBBE in passing).) But "a party not named in an EEOC charge may not be sued under Title VII." *A've v. Serv. Emps. Int'l Union*, 24 F. App'x 326, 330 (6th Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 2000e-5(f)(1) ("[A] civil action may be brought against the respondent *named in the charge*.") (emphasis added). Nor has Mr. Smith adequately alleged that "there is a clear identity of interest between [NCBE] and a party named in the EEOC charge," *Jones v. Truck Drivers' Local Union No. 299*, 748 F.2d 1086 (6th Cir. 1984), or that "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged

18

claim [against NCBE]," *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). His Title VII claim against NCBE may not proceed.

Even if this were not the case, Mr. Smith has not stated a Title VII claim against NCBE because he fails to so much as allege that NCBE is his employer for Title VII purposes.[8] *Cf., e.g.*, *Giri v. Nat'l Bd. of Med. Examiners*, No. 24-CV-410 (CRC), 2025 WL 304786, at *9 (D.D.C. Jan. 27, 2025) (observing that licensing boards "have been routinely held *not* to be [Title VII] employers" and emphasizing that "Title VII does not apply to bar examination boards") (cleaned up) (emphasis in original). Nor has Mr. Smith alleged the required intentional discrimination on NCBE's part to sustain a Title VI claim. *See Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 242 (6th Cir. 2019) ("Title VI does not reach disparate-impact discrimination.") (citation omitted).

Finally, because Mr. Smith has not sufficiently alleged that NCBE discriminated against him in violation of Title VI or Title VII, his § 1985 claims premised on such violations necessarily fail. *See Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011) (citing cases); *cf. Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014) ("Section 1985 creates a cause of action when an underlying civil rights violation is the result of a conspiracy."). Section

---

[8] Although the Court does not consider documents beyond the Amended Complaint when analyzing NCBE's motion, the Court observes that Mr. Smith previously acknowledged in his Reply to the Ohio Defendants' motion to dismiss the original Complaint that "[i]t is wholly unlikely that the NCBE could realistically be found to be [his] Title VII employer." (ECF No. 27, PAGEID # 325.)

1985(3), moreover, "may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).

NCBE's motion to dismiss is **GRANTED** as to Counts 1, 3, 4, and 6 of the Amended Complaint.

### 2. Due Process, Equal Protection, Conspiracy to Violate those Rights, and Failure to Train (Counts 7–10, 12, and 19)

To succeed on a claim under § 1983, a plaintiff must show "(1) that he [ ] was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted). "State action, or action under 'color of law,' is an element of a § 1983 claim." *Viola v. Kasaris*, No. 2:16-CV-1036, 2017 WL 735588, at *6 (S.D. Ohio Feb. 24, 2017) (Kemp, M.J.), *R&R adopted*, 2017 WL 1154190 (S.D. Ohio Mar. 27, 2017) (Smith, J.). It is the plaintiff's burden to allege state action on the part of the defendants named in a complaint. *Id.* (citation omitted).

Mr. Smith alleges that NCBE is a "non-profit corporation." (Am. Compl. ¶ 7, ECF No. 40-1.) A private entity like NCBE may be held liable under § 1983 only "when its actions so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000). Courts use three tests as part of the state-action inquiry: (1) the public-function test; (2) the state-compulsion test; and (3) the nexus test. *See id.* at 828–30. Here, Mr. Smith asserts that NCBE "participated in Ohio's adoption of the UBE" and works with the

Ohio Defendants to "develop, administer, score, and track" the same. (Am. Compl. ¶¶ 7, 39–40, 70, 122, 134, 157, ECF No. 40-1.) But the Court concludes that Mr. Smith fails to present allegations that would render NCBE a state actor under any of the above three formulations.

First, "[t]he public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.,* 499 F.3d 553, 564 (6th Cir. 2007) (internal quotations and citation omitted). "This is a high bar," and "[a]ctions merely serving the public good or public interest do not impose § 1983 liability." *Upshur v. Coombs*, No. 1:20-CV-1355, 2021 WL 1788580, at *2 (N.D. Ohio May 5, 2021). Rather, "the government must have traditionally and exclusively performed the challenged private conduct." *Id.*

It is true that states regulate the licensing of lawyers and prescribe the qualifications for admission to practice. *See, e.g.*, *Leis v. Flynt*, 439 U.S. 438, 442 (1979); Ohio Const. Art. IV, § 2. But the Amended Complaint does not clarify exactly how or to what extent NCBE "participated" in Ohio's adoption and implementation of the UBE, let alone allege that NCBE "usurped" Ohio's traditional and exclusive powers. *Lansing*, 202 F.3d at 829. And Mr. Smith cites no precedent to support the proposition that NCBE's activities assisting states with the qualifications of lawyers would amount to governmental action. On the other side, the Court is persuaded by the reasoning of those courts that have declined to find NCBE (or similar entities) to be state actors. *See, e.g.*, *Alston v. Nat'l Conf. of*

21

*Bar Examiners*, 314 F. Supp. 3d 620, 625 (E.D. Pa. 2018); *Goussis v. Kimball*, 813 F. Supp. 352, 358 (E.D. Pa. 1993) ("Neither is the preparation and administration of a test upon which state institutions may rely for academic decisions … sufficient to convert private conduct into state action."). "The public function test has been interpreted narrowly," *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003), and Mr. Smith has not sufficiently shown its application here.

Second, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Lansing,* 202 F.3d at 829 (internal quotations omitted). "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives[.]" *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). Here, the test does not apply because Mr. Smith makes no allegations that the Ohio Defendants coerced or encouraged NCBE in any manner, and the Ohio Defendants' choice to use NCBE's examination was not enough to inherently bestow governmental power on NCBE.

Last, "[u]nder the nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *S.H.A.R.K.*, 499 F.3d at 565 (internal quotations and citation omitted). The nexus test is a restrictive approach, and "the Sixth Circuit has made clear that the ties between the private party and the State must be

22

substantial." *Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at \*24 (N.D. Ohio Mar. 22, 2007) (citation omitted).

The nexus between the State of Ohio, its agencies, and NCBE is not substantial here. Importantly, the Amended Complaint acknowledges that the Ohio Defendants, not NCBE, establish Ohio's licensing standards and institute licensing requirements. (Am. Compl. ¶¶ 34–38, ECF No. 40-1.) NCBE, meanwhile, simply provides, scores, and tracks the standardized examinations for individuals who seek licensure. (*Id.* ¶ 7, PAGEID # 496.) Mr. Smith has neither alleged that Ohio delegated its licensure function to NCBE nor asserted that any Ohio government body controls or regulates NCBE.

The Amended Complaint's other allegations as to NCBE's relationship with Ohio are equally unhelpful. For instance, Mr. Smith asserts that NCBE "is contracted to do business with" the Ohio Defendants. (Am. Compl. ¶ 7, ECF No. 40-1.) But an entity's status as a government contractor is not enough to transform it into a state actor. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Mr. Smith's assertion that NCBE receives government funds similarly fails. *See id.* at 840 (finding private school's personnel decisions not attributable to the state even though "virtually all of the school's income was derived from government funding"); *Lansing*, 202 F.3d at 830 ("[N]either public funding nor private use of public property is enough to establish a close nexus between state and private actors.").

23

At bottom, Mr. Smith has not sufficiently alleged that NCBE acted under color of state law with respect to the development, delivery, and execution of the UBE, such that his § 1983 claims against NCBE cannot proceed.

Finally, given that Mr. Smith has not plausibly alleged a constitutional violation by NCBE, he also has not plausibly alleged that NCBE conspired to violate his rights under § 1985. *See, e.g.*, *Gearheart v. Fed. Rsrv. Bank of Cleveland*, 516 F.2d 353, 354 (6th Cir. 1975) ("A necessary element of a civil rights claim pursuant to 42 U.S.C. §§ 1983 and 1985 is the violation of a constitutional right.").

Therefore, NCBE's motion is **GRANTED** as to Counts 7–10, 12, and 19.

### 3. Privileges and Immunities Clause, Commerce Clause, and Conspiracy to Violate those Clauses (Counts 13, 15, 16, and 18)

Mr. Smith's claims arising from the Privileges and Immunities Clause and the Commerce Clause are similarly unsuccessful because NCBE is not a government actor, but rather a private entity. The Privileges and Immunities Clause has not been interpreted as regulating the conduct of private actors. *See generally McBurney v. Young*, 569 U.S. 221, 227 (2013). Likewise, "[t]he dormant Commerce Clause is addressed to actions by states." *The Real Est. Bar Ass'n For Mass., Inc. v. Nat'l Real Est. Info. Servs.*, 608 F.3d 110, 123 (1st Cir. 2010); *see also Or. Waste Sys., Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 98 (1994) ("[T]he [Commerce] Clause has long been understood to have a 'negative' aspect that denies *the States* the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.") (emphasis added).

Because these two claims cannot succeed, Mr. Smith's § 1985 claims premised thereon must also be dismissed. Accordingly, the Court **GRANTS** NCBE's motion as to Counts 13, 15, 16, and 18.

### 4. State-Law Claims (Counts 2, 5, 11, 14, 17, and 20)

Unlike the Ohio Defendants, NCBE is a citizen of a different state than Mr. Smith. (*See* Am. Compl. ¶¶ 1, 7, ECF No. 40-1; ECF No. 43, PAGEID # 514.) As the parties are diverse and the amount in controversy exceeds the minimum requirement, the Court has original jurisdiction over Mr. Smith's state-law claims against NCBE. *See* 28 U.S.C. § 1332. So, the maxim that a court should decline to exercise supplemental jurisdiction over state-law claims where it dismisses federal issues before trial, *see Musson Theatrical*, 89 F.3d at 1255, does not apply.

Nevertheless, Mr. Smith has not stated claims for conspiracy or negligent/intentional infliction of emotional distress. As to the conspiracy claims, an essential element is "the existence of an unlawful act independent from the actual conspiracy." *Carney v. Columbus City Schs. Bd. of Educ.*, No. 2:18-CV-250, 2020 WL 1921206, at *7 (S.D. Ohio Apr. 21, 2020) (Morrison, C.J.) (applying Ohio law). Given that Mr. Smith has not plausibly alleged any other cause of action, his claims that NCBE conspired to discriminate against him likewise fail. *See, e.g., Newton v. Kardashian*, No. 1:24-CV-00027, 2024 WL 4544328, at *13 (N.D. Ohio Oct. 22, 2024) (applying Ohio law and dismissing conspiracy claim when "the complaint fails to state a claim for any such underlying act"), *aff'd*, No. 24-3966, 2025 WL 3200113 (6th Cir. Sept. 23, 2025).

25

Nor has Mr. Smith plausibly alleged either an intentional infliction of emotional distress ("IIED") claim or a negligent infliction of emotional distress ("NIED") claim. The Court has found that the Amended Complaint does not sufficiently allege constitutional or statutory violations, so there is no basis for an IIED or NIED claim. *See, e.g.*, *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1013 n.11 (6th Cir. 2024) (applying Ohio law).

Moreover, a successful IIED plaintiff must plausibly allege, *inter alia*, that he "suffered serious emotional distress of a nature no reasonable person could be expected to endure." *Doe v. Cuyahoga Cnty. Cmty. Coll.*, 251 N.E.3d 692, 699 (Ohio Ct. App. 2024) (citation omitted). NIED claims are also limited to instances where a plaintiff "either witnessed or experienced a dangerous accident or appreciated the actual physical peril, and, as a result of this cognizance, suffered serious emotional distress." *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995). Even taking the Amended Complaint's allegations as true, nothing indicates any dangerous accident or physical peril, and the only allegation concerning Mr. Smith's level of suffering is a single conclusory assertion that he suffered "severe emotional distress." (Am. Compl. ¶ 210, ECF No. 40-1); *see, e.g.*, *Iqbal*, 556 U.S. at 678 (holding that a plaintiff cannot simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Accordingly, NCBE's motion to dismiss is **GRANTED** as to Counts 2, 5, 11, 14, 17, and 20 of the Amended Complaint.

## IV. MOTION TO STAY DISCOVERY & MOTION FOR PRELIMINARY INJUNCTION

The Ohio Defendants ask the Court to stay discovery, as well as any case management or other related orders, pending its decision on their motion to dismiss. (ECF No. 44.) Because the Court ruled on the Ohio Defendants' motion to dismiss herein, their motion to stay discovery is **DENIED as moot**.

Further, because the Court has dismissed all of Mr. Smith's claims against all Defendants, his motion for a preliminary injunction is **DENIED as moot**.

## V. CONCLUSION

For the reasons stated herein, NCBE's motion to dismiss (ECF No. 43) is **GRANTED**, the Ohio Defendants' motion to dismiss (ECF No. 45) is **GRANTED**, the Ohio Defendants' motion to stay discovery (ECF No. 44) is **DENIED as moot**, and Mr. Smith's preliminary injunction motion (ECF No. 48) is **DENIED as moot**.

The Clerk shall enter judgment for Defendants and terminate this case.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

27